**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-5208

and

No. 93-4090

BILLY J. HALE,

Plaintiff-Appellee,

VERSUS

CARL TOWNLEY, ET AL.,

Defendants-Appellants.
****************************************************
BILLY J. HALE,

Plaintiff-Appelalnt,

versus

CARL TOWNLEY, ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

(February 9, 1995)

Before REAVLEY and DAVIS, Circuit Judges, and ROSENTHAL, District
Judge.[*]
Rosenthal, District Judge:

### Opinion on Reconsideration

This court withdraws the opinion issued in this case
dated May 3, 1994, appearing at 19 F.3d 1068, and substitutes the
following:

---

[*]   District Judge of the Southern District of Texas,
sitting by designation.

Billy J. Hale, plaintiff below, sued fifteen law enforcement officers under 42 U.S.C. § 1983, alleging conspiracy to retaliate for Hale's exercise of his right of access to the courts; unconstitutional search and seizure; and the use of excessive force during search and arrest. Each defendant filed a motion for summary judgment based on qualified immunity. The district court granted the motions for summary judgment for ten of the defendants and dismissed Hale's claims against them. Hale appealed from the summary dismissal of three of those ten defendants. The district court denied the motions for summary judgment as to five of the defendants, who have filed interlocutory appeals based on the qualified immunity defense.

For the reasons set out below, this court affirms the district court in part and reverses in part.

## I. Background

In July 1985, Hale was arrested for aggravated kidnapping. The grand jury did not return an indictment. Hale then filed a 42 U.S.C. § 1983 lawsuit in federal court against the head of operations of the Sheriff's Department in Caddo Parish, Louisiana and against an FBI agent, alleging that the arrest had been without probable cause. In April 1988, following a trial, the district court entered judgment in favor of Hale against both officials. That judgment was affirmed on appeal. *Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990).

Hale alleges that beginning in the summer of 1988, shortly after his successful trial, he was the target of a campaign by law enforcement officers from different agencies to harass him

and to implicate him in criminal activity. The allegations as to the events and players are set out in chronological order below.

Hale alleges that the Shreveport City Police Department began investigating the Sandpiper nightclub, where Hale worked as manager of the club's exotic dancers, starting in the summer of 1988. By September 1991, Shreveport police officers had issued thirty citations to Sandpiper employees for obscenity and for violations of Shreveport's drinking ordinance. With one exception, these citations were later dismissed. No other similar establishment was cited for such violations during this period. Defendants Russell Stroud ("Stroud"), E. Keith Fox ("Fox"), Larry Townley ("Larry Townley") and Tom V. Humphrey ("Humphrey") were officers with the Shreveport City Police Department.

Hale also alleges that in November 1989, the Caddo-Bossier Narcotics Task Force ("NTF") began a narcotics investigation into the Sandpiper. Defendants Carl Townley ("Carl Townley"), a deputy with the Caddo Parish Sheriff's Department, and P.M. Plummer ("Plummer"), a deputy with the Bossier Parish Sheriff's Department, were assigned to the NTF.

Hale alleges that the Caddo Parish Sheriff's Department also began investigating and harassing him during this time period. In early 1990, defendant R.M. Fant ("Fant"), a deputy with the Caddo Parish Sheriff's Department assigned to the intelligence division, allegedly requested a former Sandpiper dancer to find an underage female willing to have sex with Hale so that Hale could be arrested.

On April 10, 1990, NTF agents and Shreveport police officers raided the Sandpiper. NTF agents Carl Townley and Plummer

-3-

participated in this raid. Shreveport police officers issued citations for violations of the municipal drinking ordinance, and the NTF arrested four individuals on narcotics charges. Later the same month, Hale's car was stopped by Officer Humphrey of the Shreveport City Police Department, searched, and impounded.

In January 1991, Hale applied for and received an official permit for a private Super Bowl party at the Sandpiper. On January 27, 1991, during the party, Shreveport police officers raided the Sandpiper and cited Hale for allowing gambling on the premises. After the citation was issued, Shreveport police officers Stroud and Fox, accompanied by sheriff's deputy Fant, summoned Hale outside the Sandpiper. Hale alleges that after an exchange of words, Fox beat Hale while searching him for weapons. Hale alleges that Stroud and Fant stood by and laughed, making no effort to stop the illegal force.

Hale alleges that the following day, NTF representative Carl Townley attempted to use an individual to set Hale up to purchase some marijuana, but was unsuccessful.

On March 15, 1991, the Sandpiper was raided by approximately fifteen Shreveport police officers, including Stroud, for license violations. Hale arrived at the club with a video camera and began filming the raid. Hale alleges that after he entered the Sandpiper, several officers, including Stroud, accosted Hale; arrested him; handcuffed him; beat his head against a table inside the bar; forcibly jerked the handcuffs upward behind his back, injuring his hand, wrists, and thumb; and took him outside, where the officers beat his head against the hood of a truck.

-4-

Hale alleges that during many of these incidents, various defendants made statements that Hale was the target of these activities because of his prior lawsuit.

On March 27, 1991, Hale filed this section 1983 civil rights action. Hale's complaint alleges that the Sandpiper investigation was a conspiracy to retaliate against Hale for his successful prior lawsuit; that some of the defendants unconstitutionally searched and seized him; and that some of the defendants used excessive force against Hale on two occasions.

Each of the defendants filed a motion for summary judgment. The district court dismissed Hale's claims against the following ten defendants: Steve Prator, Tom Humphrey, Kenneth Weaver, Ted Cox, H.A. Lawson, R.W. Vanni, Robert Schaver, Larry Townley, R.E. Scaife, and C.A. Lewis. The district court denied Carl Townley and Plummer's motions for summary judgment dismissing the retaliation and conspiracy claims; denied Fox's and Stroud's motions for judgment dismissing the excessive force and conspiracy claims; and denied Fant's motion for summary dismissal of all the claims against him. These five defendants appeal the district court's denial of their motions for summary judgment based on qualified immunity.

Hale filed a motion to alter or amend judgment, seeking to reinstate his claims against defendants Larry Townley, Scaife, and Lewis. The district court denied that motion. The district court then entered a final judgment, pursuant to Rule 54(b), regarding the ten officers dismissed with prejudice. Hale has appealed the dismissal of the excessive force claims against Larry

Townley, Scaife, and Lewis, and the dismissal of the conspiracy claim against Lewis.

Because this case is on appeal from a summary judgment motion, we review the record *de novo,* examining the evidence in the light most favorable to the nonmovant. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). Appellants will prevail if they have demonstrated that there were no genuine issues of material fact and that they are entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505, 2510 (1986); Fed. R. Civ. P. 56(c).

## II.  Denial of the Officers' Motions for Summary Judgment

The qualified immunity analysis is a familiar one. The first step is to determine whether the plaintiff has alleged the violation of a constitutional right. *Siegert v. Gilley*, 111 S. Ct. 1789, 1793 (1991); *White v. Taylor*, 959 F.2d 539 (5th Cir. 1992). If plaintiff has alleged a constitutional violation, the next step is to decide if the right was clearly established at the time the challenged conduct occurred and whether the defendant's conduct was objectively reasonable. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993); *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993).

The denial of summary judgment on the basis of qualified immunity is within the small class of cases subject to interlocutory appeal. *Mitchell v. Forsyth*, 105 S. Ct. 2806, 2816 (1985). An appellate court has jurisdiction to review an interlocutory denial of qualified immunity only to the extent that it "turns on an issue of law." *Id*. Factual allegations are examined to determine whether they would be sufficient, if proven, to establish a violation of clearly established law. *Lampkin v.*

-6-

*City of Nacogdoches*, 7 F.3d 430, 431 (5th Cir. 1993). If disputed factual issues material to qualified immunity are present, the district court's denial of summary judgment sought on the basis of qualified immunity is not appealable. *Feagley*, 868 F.2d 1437, 1439 (5th Cir. 1989); *Geter v. Fortenberry*, 882 F.2d 167, 169 (5th Cir. 1989).

**A.  Excessive Force**

**1.  Significant Injury:  Fox, Stroud, and Fant**

Shreveport police officers Fox and Stroud and sheriff's deputy Fant claim that the district court erred in denying their summary judgment motions because Hale did not satisfy the "significant injury" requirement for his excessive force claims. Hale alleged that during the January 27, 1991 raid on the Sandpiper, Stroud summoned Hale outside "to talk." Stroud was accompanied by Fox and Fant. Hale leaned on the bumper of Fox's car. Fox, who was sitting in the car, told Hale to get off the car. Hale backed away from the car and yelled an obscenity at Fox. Fox got out of the car and asked Stroud whether Hale had been searched. Fox then slammed Hale against the car, in front of Stroud and Fant, kicked Hale, rammed his fist into Hale's testicles, and repeatedly tried to smash Hale's head into the car. Hale alleged that he suffered bruises, swollen testicles, and had difficulty in walking and in moving his neck.

Hale's allegations as to the March 15, 1991 incident are that a number of officers, including Stroud, rushed Hale, handcuffed him, twisted his right hand and arm, threw him against a table, beat his head against a table, took him outside, and beat his head against a truck. Hale alleges that his wrists bled,

blistered, and were swollen for two weeks, and that his right thumb and wrist were permanently damaged. Hale alleges that Stroud both participated in the use of excessive force and stood by without interfering while other officers beat Hale.

The constitutional standard applied by the district court required proof that the officials' actions caused a "significant injury." *Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989) (en banc) (per curiam). This court has stated that the failure to allege a "lasting harm" is not fatal to an excessive force claim. *Luciano v. Galindo*, 944 F.2d 261, 264 (5th Cir. 1991). Bleeding cuts and swelling have been held legally "significant injuries" when they were intentionally inflicted in an unprovoked and vindictive attack. *Oliver v. Collins,* 914 F.2d 56, 59 (5th Cir. 1990). Hale's factual allegations, if proven, would be sufficient to state a claim for a legally significant injury. *Johnson*, 876 F.2d at 480.

The next issue for the qualified immunity analysis is whether an objectively reasonable law enforcement officer would have known that the degree of force used was excessive in relation to the need for action. In examining the objective reasonableness of the officers' conduct, this court is to apply the standards in effect at the time the conduct took place. *Rankin*, 5 F.3d at 108; *Luciano*, 944 F.2d at 264-65. Under those standards, Hale must show a significant injury which resulted directly and only from the use of force that was clearly excessive to the need, and which was objectively unreasonable. *Johnson*, 876 F.2d at 480.

The summary judgment record shows disputed issues of fact material to whether the officers' conduct was objectively

reasonable in light of the surrounding circumstances. Hale alleged that he did not resist or threaten the officers on January 27, 1991, and that Fox beat Hale without justification. Hale also presented pleadings and summary judgment evidence that he did not threaten or resist the officers on March 15, 1991, and that he was beaten after he arrived at the raid with a video camera.

The officers presented a much different version of both occurrences. The officers disputed the lack of provocation; asserted that the officers reasonably perceived that Hale threatened them; and disputed the degree of force actually used. The denial of summary judgment based on these disputed material fact issues is not appealable.

### 2. Bystander Liability

Caddo Parish deputy sheriff Fant argues that the district court erred in refusing to grant Fant's motion for summary judgment because Fant cannot be liable as a bystander for violations of the Fourth Amendment.

The district court correctly held that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983. *Harris v. Chanclor*, 537 F.2d 203, 205-06 (5th Cir. 1976); *Smith v. Dooley*, 591 F. Supp. 1157, 1168 (W.D. La. 1984), *aff'd*, 778 F.2d 788 (5th Cir. 1985); *see also Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 205 n.3 (1st Cir. 1990), *cert. denied*, 111 S. Ct. 2266 (1991). The fact that Fox and Fant were from different law enforcement agencies does not as a matter of law relieve Fant from liability for a failure to intervene. *Chanclor*, 537 F.2d at 205-06.

Viewing the allegations and summary judgment evidence most favorably to Hale, the summary judgment evidence raises a fact issue as to whether Fant had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it. Hale alleged that during the January 27, 1991 raid, Fant stood by and laughed as Fox slammed Hale against the car; rammed his fist into Hale's testicles; and repeatedly tried to slam Hale's head into the car. Hale also alleged that Stroud and Fant yelled encouragement at Fox. This evidence is sufficient to create a genuine issue of material fact regarding Fant's acquiescence in the alleged use of excessive force. *See, e.g., McQurter v. City of Atlanta, Ga.*, 572 F. Supp. 1401, 1415-16 (N.D. Ga. 1983), *appeal dismissed*, 724 F.2d 881 (11th Cir. 1984).

B.    **The First Amendment Claims**

The district court held that, taking Hale's allegations as true, Hale stated a claim against Carl Townley, Plummer, and Fant for violating his constitutional right of access to the courts, free of retaliation. The law enforcement officers argue that under the standards applicable during the time of the challenged conduct, there was not a clearly established right of access to the courts, free of retaliation.

An official's conduct is protected by qualified immunity if, in light of legal rules that were clearly established at the time of the action, it was objectively reasonable. A constitutional right is clearly established if "in light of pre-existing law the unlawfulness [of the alleged conduct is] apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is true even if the "very action in question" had not then been

-10-

held to be a constitutional violation. *Id.* at 640; *see also Spann v. Rainey*, 987 F.2d at 1114-15. "Put another way, officials must observe `general, well-developed legal principles.'" *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 455 (5th Cir.) (citation omitted), *cert. denied sub nom. Lankford v. Doe*, 115 S. Ct. 70 (1994).

The Fifth Circuit has recently examined the right of access to the courts in the context of qualified immunity. In *Foster v. City of Lake Jackson*, 28 F.3d 425 (5th Cir. 1994), the court held that a claim that city officials concealed information during discovery in a civil suit was barred by qualified immunity. The court rested its holding on the ground that in 1988, there was no clearly established constitutional right to litigate free of discovery abuses. *Id.* at 430.

*Foster* held that the right of access to courts, at least as it was clearly established in 1988, was the facilitative right to institute a suit without official resistance, blocks, or delay to filing. *Id.* The court stated that even if a more broadly based right had developed by 1994, it did not exist in 1988, which is the time when the alleged conduct at issue in this case began.

Here, the claimed violation is not official resistance to filing a lawsuit. Rather, the claimed violation is that after Hale had filed and won a suit challenging law enforcement officials, without official impediment or interference, he was retaliated against for his successful litigation.

In *Crowder v. Sinyard*, 884 F.2d 804, 813 (5th Cir. 1989), *cert. denied*, 110 S. Ct. 2617 (1990), the court recognized that "courts have held that if state officials in some way retaliate

-11-

against an individual for seeking redress through the courts, they have violated that person's right of access to the courts." *Crowder*, 884 F.2d at 813 n.9 (citations omitted).[1]  However, because the Fifth Circuit was not faced with a claim of retaliation for prior litigation, but rather with a claim of interference with the right of access to the courts, it was not required to decide the contours of such a right or whether it was "clearly established."[2]

The Court in *Anderson* cautioned that "the right the official is alleged to have violated must have been `clearly established' in a more particularized, and hence, more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

Hale alleged that Carl Townley, Plummer, and Fant took actions in retaliation for Hale's earlier lawsuit.  The proper inquiry in this case is whether, in 1988, it was reasonable for Carl Townley, Plummer, and Fant to have known that their conduct, if undertaken for the subjective purpose of retaliating for the

---

[1]  The Fifth Circuit stated:  "We cite these cases as general background and do not have occasion to approve or disapprove of their respective holdings."  *Crowder*, 884 F.2d at 813 n.9.

[2]  In *Crowder*, the plaintiffs alleged that by causing or allowing plaintiffs' property seized during a search to be physically removed to another state, the defendants interfered with the plaintiffs' right of access to the courts — specifically, with their ability to use the court system to recover the property.  The plaintiffs in *Crowder* did not allege that they were victims of retaliation for exercising their right of access to the courts.  Nor did the plaintiffs claim that the defendants had attempted to cover up facts critical to the plaintiffs' lawsuits.  Based on those facts, the court held that the plaintiffs did not state a constitutional claim.

-12-

successful prosecution of a prior lawsuit, violated the First Amendment.

There is no constitutional right to be free from official investigation. *U.S. v. Allibhai*, 939 F.2d 244, 249 (5th Cir. 1991) (citation omitted), *cert. denied*, 112 S. Ct. 967 (1992). The district court held that there was no evidence to support the conclusion that the investigation by or tactics of Carl Townley and Plummer had violated Hale's Fourth Amendment rights.

As it was clearly established in 1988, the right of access to the courts was limited to a facilitative right to institute a suit without official impediment. *Foster*, 28 F.3d at 430. No broader right was established. *Id.* This court holds that at the time of the conduct at issue, the constitutional tort of retaliation against an individual for having filed and won a lawsuit was not so clearly established that a reasonable official would understand that actions taken with this intent violated the First Amendment. Accordingly, the district court's denial of summary judgment as to Hale's First Amendment retaliation claims against Carl Townley, Plummer, and Fant is reversed.

### C. Conspiracy

The district court held that there was a genuine issue of fact as to whether Carl Townley, Plummer, Fant, Fox, and Stroud conspired to retaliate against Hale for exercising his First Amendment right of access to the courts. A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but "a conspiracy claim is not

-13-

actionable without an actual violation of section 1983." *Pfannstiel*, 918 F.2d at 1187 (citations omitted).

In *Pfannstiel*, the court found that when each state action alleged to have harmed the plaintiffs was determined to be qualifiedly immune, there was no need to reach the issue of whether a conspiracy existed to engage in those actions. *Id.* at 1187–88. Similarly, in this case, all officers alleged to have violated Hale's First Amendment rights are entitled to qualified immunity. Therefore, the conspiracy claim is not actionable. The district court's denial of summary judgment as to the conspiracy claims against Carl Townley, Plummer, Fant, Fox, and Stroud is reversed.

**III. Hale's Appeal**

Hale appeals from the district court's grant of summary judgment and refusal to alter or amend the judgment dismissing defendants Larry Townley, Scaife, and Lewis. This court affirms the district court as to Lewis but reverses as to Larry Townley and Scaife.

Hale admits that he presented no summary judgment evidence to show that Lewis had been involved in the Sandpiper raid on March 15, 1991. Hale argues that there was evidence in the defendants' summary judgment exhibits that Larry Townley and Scaife were involved in that raid.

Upon review of the record, this court also finds that the district court did not err in denying Hale's motion to alter or amend the summary judgment granted in favor of Lewis, but did err as to Larry Townley and Scaife. A district court has considerable discretion in deciding whether to grant or deny a motion to alter a judgment. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6

-14-

F.3d 350, 355 (5th Cir. 1993). The district court must strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts. *Id.*

If a party seeks to upset a summary judgment on the basis of evidence that was not timely presented, the district court must balance the following factors: (1) the reasons for the failure to file the evidence in a timely fashion; (2) the importance of the evidence to the moving party's case; (3) whether the evidence was available before the summary judgment decision was made; and (4) the likelihood that the non-moving party will suffer prejudice if the motion to alter is granted. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *cert. denied*, 114 S. Ct. 171 (1993); *see also Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

There was original and supplemental summary judgment evidence identifying Larry Townley and Scaife as two of the officers who participated in, and used excessive force during, the March 15, 1991 "raid." The district court abused its discretion by denying the motion to alter the judgment dismissing the excessive force claims against Larry Townley and Scaife.

Hale's untimely evidence of Lewis's involvement, which included that Lewis pointed Hale out to another officer and that Lewis admitted that he saw a "scuffle" occurring, is insufficient to raise a genuine issue as to whether Lewis violated Hale's constitutional rights. Because all officers alleged to have violated Hale's First Amendment rights are entitled to qualified immunity, the conspiracy claim against Lewis is not actionable.

-15-

This court affirms the dismissal of the excessive force and conspiracy claims against Lewis.

## IV.  Conclusion

This court DISMISSES the appeal of Stroud, Fox, and Fant from the district court's denial of summary judgment based on qualified immunity; REVERSES the district court's denial of summary judgment as to the First Amendment claims against Carl Townley, Plummer, and Fant; REVERSES the district court's denial of summary judgment as to the claims against Carl Townley, Plummer, Fant, Fox, and Stroud for conspiracy to violate Hale's right of access to the courts; REVERSES the district court's order granting summary judgment dismissing Larry Townley and Scaife; and AFFIRMS the district court's order granting summary judgment as to Lewis.  This case is REMANDED to the district court for further proceedings consistent with this opinion.

DISMISSED in Part; AFFIRMED in Part; REVERSED in Part; Case Remanded.