United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 17, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-10767

CECIL BOYD BOWDEN, JR.,

Plaintiff-Appellant,

versus

CITY OF ELECTRA, ET AL.,

Defendants,

CITY OF ELECTRA; JOSEPH SCHUTZE; DUSTIN BARTRAM; JUSTIN KAISER;
OFFICER JOHNSON; CODY SHAW, Individually and Electra Interim
Chief of Police; ALAN BOYD, Individually and in his official
capacity as Chief of Police,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
(USDC No. 7:02-CV-108-R)

Before REAVLEY, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

Cecil Bowden, Jr. complains of harassment in his suit against
local police officials under § 1983. He appeals the district
court's grant of summary judgment to the police officers. We
affirm.

I

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

The City of Electra, Texas is one of the several small towns lying on the Texas-Oklahoma border. Cecil Bowden, Jr. alleges that over the last few years, the Electra Police Department routinely harassed and detained him without probable cause or reasonable suspicion. While citing eleven incidents, Bowden does not dispute that only one occurred within the applicable statute of limitations,[1] and so we focus on that single event, leaving the others as non-actionable historical background.

Bowden claims that on May 15, 2000, two City of Electra police officers stopped him while he walked near his home. He consented to a search of his person, but the officers found nothing. Yet, he says, he was detained "for over an hour" while the officers checked for federal warrants. While the officers were awaiting the results of that check, Joseph Schutze, another City of Electra police officer, arrived on the scene. Bowden claims that Schutze told him that he smelled anhydrous ammonia[2] coming from Bowden's residence[3] and asked for permission to search the house and, when Bowden

---

[1] See *Ali v. Higgs*, 892 F.3d 438, 439 (5th Cir. 1990) (holding that, for § 1983 actions, the applicable statute of limitations is borrowed from the state in which the action is filed). In Texas, the applicable period is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a). Bowden's complaint was filed on May 14, 2002. The only event within the statute of limitations is the event allegedly occurring on May 15, 2000.

[2] Although anhydrous ammonia's intended use is as an agricultural fertilizer, it is also a key ingredient in the production of methamphetamine.

[3] Bowden's complaint and Bowden's summary judgment evidence are inconsistent on this point. Bowden's complaint indicates that Officer Schutze smelled anhydrous ammonia emanating from Bowden's residence. Bowden's summary judgment evidence – the affidavit submitted by Officer Schutze to the magistrate – indicates that it was "Officer D. Bartram #206" and "Officer Kaiser # 204" that detected the odor of anhydrous ammonia coming from Bowden's residence.

refused, that Bowden was handcuffed and placed in the back of a police car, where he sat for over an hour until the police obtained a search warrant.

Bowden alleges that Officer Schutze lied to obtain the warrant, falsely stating in his supporting affidavit that he smelled anhydrous ammonia at Bowden's residence. After the warrant was obtained, Bowden alleges that he was arrested, taken to jail, and held on a $1.5 million bond until his release one year later.

On May 14, 2002, Bowden brought suit under 42 U.S.C. § 1983 against the City and various members of its police department,[4] alleging violations of the Fourth and Fourteenth Amendments and similar provisions of the Texas Constitution and making several claims for negligent hiring, retention, training, and supervision, which were dropped. As required by the scheduling order, the parties filed a joint motion for summary judgment on September 15, 2003. Two months later, on November 12, 2003, Bowden filed a motion to amend his response to the defendant's motion for summary judgment. In this motion, Bowden attempted to place before the district court additional evidence rebutting the defendants' motion for summary judgment. On June 3, 2004, the district court granted the defendants' motion and rendered judgment in their favor,

---

[4] Although it is unclear in what capacity some of the defendants were sued, each defendant asserted qualified immunity in his answer. The issue of qualified immunity was not addressed by the district court, as it found that Bowden had failed to establish a violation of his constitutional rights. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002) ("The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation.").

dismissing Bowden's remaining state and federal constitutional claims with prejudice.[5]  That same day, the district court also denied Bowden's motion to amend his response to the defendants' motion for summary judgment.  On June 24, 2004, Bowden timely filed a notice of appeal from the final judgment rendered on June 3.  Then, on June 24, Bowden filed a motion for relief from judgment under Rule 60(b),[6] which the district court denied on October 26, 2004.  This Court has jurisdiction under 28 U.S.C. § 1291.

Bowden argues that the district court's judgment should be reversed on six different grounds.  We address these in turn.

II.

Bowden first argues that the district court erred in refusing to allow him to amend his response to the defendants' motion for summary judgment.  Bowden argues that material knowledge came to his attention on or after October 17 and that he filed his motion to amend on November 8, which the district court denied on June 3, 2004, the same day that it granted summary judgment to the defendant.  We review the district court's denial of the motion for

---

[5] The district court held that Bowden's claims under the Texas Constitution were duplicative of his claims under the Federal Constitution.  Because neither party on appeal has addressed the Texas Constitution apart from the Federal Constitution, we will not address them separately, focusing solely on the Federal Constitution.

[6] Bowden was unable to file his motion under Rule 59(b), which requires that any motion to alter or amend a judgment be filed "no later than 10 days after entry of the judgment." FED. R. CIV. P. 59(e).

4

abuse of discretion.[7]

Bowden sought to introduce evidence that Corrin McGrath, a City official, conducted an "internal investigation" into the Electra Police Department. In a deposition in an unrelated lawsuit taken in November of 2002, McGrath stated that evidence in Bowden's case was "missing" or "tainted" or "corrupted" in some way, requiring that the charges against Bowden be dropped. Bowden claims that he fortuitously discovered the deposition through a personal relationship between his counsel and plaintiff's counsel in that case.

The district court did not abuse its discretion in denying Bowden's motion. First, Bowden does not explain the relevance of the evidence, aside from an assertion that it shows "actual

---

[7] *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993); *see also Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985) ("[A] decision to disregard all materials submitted after a reasonable filing deadline is certainly not an abuse of discretion because it allow[s] the district court to preserve the moving party's right to respond to the resisting party's argument and to decide the summary judgment motion in a timely fashion."). This standard is consistent with the standard we use for reviewing a denial of a motion to amend pleadings, *see Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997), a denial of a motion to alter or amend a judgment under Rule 59(e) due to alleged newly discovered evidence, *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995); *see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), and a denial of a motion for relief under Rule 60(e) due to evidence not considered by the district court, *see Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401-03 (5th Cir. 1981). Bowden mistakenly argues that *Hale*, with its list of four factors to consider, specifically controls here; however, the motion in that case was a Rule 59(e) motion because it was filed *after* the district court rendered judgment. Here, the district court ruled on the motion *before* or contemporaneously with its ruling on the motion for summary judgment. Thus, we review its decision for simple abuse of discretion. However, the factors announced in *Hale* are relevant for our analysis here, and the practical difference between the *Hale* "test" and a simple abuse of discretion test may be minimal.

5

knowledge that the evidence against Bowden was 'tainted' or 'corrupted' in some way," that it speaks to the "policies and practices of the City," and that it is "important." The evidence does not suggest an official policy or custom, and no policy or custom that is directly related to Bowden's underlying claims.[8] Bowden's bare assertion to the contrary is insufficient. In addition, McGrath's testimony offers no support for Bowden's claim of an "internal investigation." Moreover, Bowden did not refer to the evidence in his proposed amended response other than to set out the general basis of the testimony in the facts section.

Second, Bowden has not shown why he could not have introduced this evidence initially. He claims that he did not have "access" to the evidence when the motion for summary judgment was filed on September 15, 2003, because McGrath did not become the City Administrator[9] until after the events involving Bowden occurred, in May of 2000. But he never contradicts the defendants' allegation that McGrath was in office later, when Bowden was released from jail. As the defendants point out, it seems likely that Bowden would have been told by someone that he was being released and not tried because of evidentiary problems; he should have sought evidence from McGrath then. And even if Bowden were not told at

---

[8] *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978) (discussing the appropriate standard for municipality liability under § 1983).

[9] Bowden claims that McGrath was the City Administrator, while the defendants claim that he was Chief of Police. However, this dispute is irrelevant here.

that time that evidentiary problems led to his release, he should have, for purposes of this case, inquired as to why he was released. A simply inquiry would have revealed the answer and led a reasonable person to interview McGrath, or someone else, who could have provided the evidence that Bowden now claims is relevant. Litigants cannot expect evidence to fall into their laps.

The district court did not abuse its discretion in refusing Bowden's request for permission to amend his response.

## III.

Bowden next argues that the May 15, 2000 stop violated his Fourth Amendment right to be free from unreasonable search and seizure. He argues that both the initial stop and the subsequent detention violated *Terry v. Ohio*.[10] The district court's analysis follows:

> With regard to his stop, Plaintiff alleges that his detention on May 15, 2000, by Electra police officers was neither temporary nor reasonably related to the circumstances justifying the stop. Relying on *Terry v. Ohio*, 392 U.S. 1 (1968), Plaintiff claims that Defendants violated the Fourth Amendment because the investigative detention to which he was subjected was unreasonable and unnecessarily lengthy. Under *Terry*, reasonableness of a seizure and search requires that "the officer's action was justified at its inception, and . . . it was reasonably related in scope to the circumstances which justified the interference in the first place." Plaintiff, in making his claim, never articulates the reason for his stop. He also does not aver that there was no reason for his stop. No summary judgment evidence

---

[10] 392 U.S. 1 (1968).

7

explains why Plaintiff was stopped, so it is therefore impossible to determine whether any ensuing search was reasonably related to the initial justification for the stop. Rather, Plaintiff contends that he voluntarily empted his pockets and was detained for an hour while officers checked his criminal record. It does not appear that a body search was conducted at that time, as Plaintiff voluntarily empted his pockets and declined to consent to the search of his residence. Defendants are entitled to summary judgment as to this claim.

We review *de novo* the district court's findings of reasonable suspicion and reasonableness of the stop.[11]

Regarding the initial stop, Bowden argues that the district court erred in placing the burden of proving the reasons for the stop on him, rather than the defendants.[12] Bowden relies on language in *Terry v. Ohio*, which provides that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[13] *Terry* involved a motion to suppress seized evidence in a criminal case where the state must justify the seizure.[14] In contrast, a plaintiff in a suit filed under 42 U.S.C. § 1983 has the burden of

---

[11] *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994).

[12] The defendants argue on appeal that "Bowden never alleged at the trial court that the initial stop was illegal." A review of Bowden's complaint and response to defendants' motion for summary judgment indicates that this is correct. However, the district court addressed the validity of the initial stop, so we do as well.

[13] *Terry*, 392 U.S. at 21.

[14] *Id.*

8

proving each element of the constitutional violation.[15]  He did not

shoulder that burden.  As the district court pointed out, Bowden

did not allege a reason for the stop or that it was without reason.

The district court did not err in granting summary judgment to the

defendants on this Fourth Amendment claim.

Bowden also urges that his one-hour detention was unreasonable

under *Terry*.[16]  Again, Bowden's claims must fail because he has

failed to present any evidence to sustain his burden of proof under

§ 1983.  Bowden has presented no evidence accounting for (nor has

he even alleged) the reasons for the initial detention or the

subsequent detention; he has not explained why the one-hour delay

was unreasonable.  He does not explain why the officers did not

have reasonable suspicion throughout the hour; indeed, the existing

evidence – that Bowden had been stopped many times before, that the

officers smelled anhydrous ammonia, that Bowden was a known

methamphetamine user and dealer – suggests that the officers did

---

[15] *See Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir. 1988) ("We deal with both constitutional theories [malicious prosecution and false arrest], and find that under each theory, . . . Plaintiff failed to prove a constitutional violation."); *see also Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("A prerequisite to recovery under [§ 1983] is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States."); *Clark v. Mann*, 562 F.2d 1104, 1117 (8th Cir. 1977) ("Where, as here, suit is brought pursuant to 42 U.S.C. § 1983, plaintiffs ordinarily retain the burden of proof throughout the trial.").

[16] The parties disagree about whether *United States v. Kelley*, 981 F.2d 464 (5th Cir. 1993), applies.  This court in *Kelley* held that a consent to search cures any *Terry* error that may have occurred with respect to detention.  In *Kelley*, however, the court held that the consent cured any error that occurred *prior* to the consent, while here the alleged error (the one-hour detention) occurred *after* the consent.  Whether, in such a case, the prior consent cures a later error, we do not decide because Bowden has failed to carry his burden of proof.

have reasonable suspicion. Nor does he explain why the officers' efforts to get a warrant and search the house were not diligent. The district court's judgment on the *Terry* claims was proper.

IV.

Bowden next argues that his Fourth Amendment rights were violated because Officer Schutze falsified information - that he and another officer smelled anhydrous ammonia coming from Bowden's house - in his application for the search warrant pursuant to which his house was searched. The district court ruled that Bowden "fail[ed] to point to any summary judgment evidence to support his contention." On appeal, Bowden states that although he "might have made the point more emphatically, the fact that no anhydrous ammonia was found in or around Bowden's home is repeatedly stated." Bowden did introduce two pieces of evidence in the district court - Schutze's affidavit submitted to the magistrate for the search warrant and the list of items seized from his house after the search. His argument is essentially that, because anhydrous ammonia is not included on the list, Schutze's must have lied in his affidavit.

Bowden's evidence is insufficient to raise a genuine issue of material fact as to whether Schutze lied in his affidavit. It is important to remember that, although a party does not have to prove a fact by a preponderance of the evidence to survive summary judgment, he also cannot proffer an unbelievable factual scenario;

10

the evidence must be believable by a *reasonable* trier of fact.[17] While "anhydrous ammonia" was not on the list of things seized, the search of Bowden's house turned up methamphetamine, a "glass jar with clear liquid," a "plastic gallon container containing liquid & white wet residue," and lighter fluid, among other methamphetamine production materials. There is nothing in the record to create a genuine issue of material fact regarding the truth of the officer's testimony that he smelled anhydrous ammonia.[18]

V.

Bowden's next claim is that the defendants violated his Fourth Amendment rights by unnecessarily destroying his property in the course of their search. Bowden argued in his complaint that his dog, Lexus, was taken and destroyed following the October 24, 1999 search – an event outside of the statute of limitations. This is the only destruction of property mentioned by Bowden in his pleadings.

Bowden's sole evidence of destruction of property was an

---

[17] *See, e.g., Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003).

[18] From looking at the district court's language – that Bowden "fail[ed] to point to any summary judgment evidence to support his contention" – it may be that the district court did not consider the one piece of evidence offered by Bowden. Nonetheless, that one piece of evidence is insufficient to create a triable issue of fact. Bowden also argues that the defendants have waived the argument that something else in the house may have smelled of anhydrous ammonia because they raise it for the first time on appeal; not only is this irrelevant because the district court was charged with independently weighing the evidence, but it appears that the defendants sufficiently raised the issue below in denying that the affidavit contained lies.

11

affidavit by Sheree Bowden-McNaughton, Bowden's sister, presented by Bowden in response to the defendants' motion for summary judgment. She attested to the following facts:

- "[Bowden] was arrested during the evening of Mother's Day, 2000. After the arrest, the police returned to [Bowden's] home, without a search warrant and confiscated [Bowden's] dog Lexus and left Lexus' four (4) nursing pups. While at the house, the police destroyed [Bowden's] home."[19]
- "After the arrest I went to my brother's house and discovered the home had been destroyed by the Electra Police Department. Specifically, the place was ransacked to such a degree, that it took several days to create a path through the house so I could move around."
- "Lisa Moenning, Electric Official and Animal Control Officer admitted to me that she witnessed Joseph Schutze beating Lexus while the animal was being held in the dog pound. After the beating, Schutze pulled out his gun and shot Lexus in the head."

In light of this affidavit, the district court considered two distinct allegations of property destruction that allegedly occurred during the May 15 search: the killing of the dog[20] and the "ransack[ing]" or "destr[uction]" of the house. Considering all evidence in the light most favorable to Bowden, the district court concluded that the defendants were entitled to summary judgment.

---

[19] The validity of this statement is questionable. Bowden alleges that the events and arrest occurred on May 15, 2000; McNaughton attests that the arrest occurred on Mother's Day, which, in 2000, was on May 10.

[20] Bowden, in his brief on appeal, admits that his original complaint and motion for summary judgment misstated the date concerning the killing of his dog, Lexus, and that it occurred in connection with the May 15, 2000 arrest, which is roughly consistent, *see supra* note 19, with Bowden-McNaughton's allegations. In any event, the district court considered the alleged destruction of the dog, and so we do as well.

We review that ruling *de novo*.[21]

Regarding the dog, the district court concluded that Bowden-McNaughton's statement about Moenning's statement was incompetent evidence under Federal Rule of Civil Procedure 56(e). That rule requires affidavits to be based on such facts as would be admissible in evidence. Bowden-McNaughton's statement appears to be inadmissible hearsay, although Bowden argues on appeal that Moenning's statement was an admission by a party, admissible under Federal Rule of Evidence 801(d)(2)(D). Defendants contend that Moenning was not a City employee when she made the statement. We find no record evidence regarding Moenning's employment status at the time she made the statement. Because Bowden has the burden of establishing the admissibility of evidence supporting his claim, the district court was correct in concluding that Bowden-McNaughton's statement about Moenning's statement was inadmissible. Moreover, because this is the only evidence that the dog was killed, the district court was correct in rejecting Bowden's claim.

Regarding Bowden-McNaughton's claim that Bowden's house was "ransacked" and "destroyed," the district court concluded that "there were no specific allegations of property destruction at the time of the search." The defendants also point out that Bowden admitted to receiving his items back from the police department,

---

[21] *Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998).

13

except for his dog.[22]  Bowden had the burden, in responding to the defendants' motion for summary judgment, to create a genuine issue of material fact with respect to his destruction-of-property claim, and he failed to do so.

## VI.

Bowden's fifth claim is that the district court erred in concluding that Bowden failed to prove official knowledge of a custom of unconstitutional behavior as required by *Monnell v. Department of Social Services*.[23]  The district court acknowledged Bowden's allegations of an official policy (based on the eleven instances in which he was stopped by Electra police officers) and a constitutional violation (the *Terry v. Ohio* claim).  The district court determined, however, that Bowden "never avers the second required showing for a claim of municipal liability.  The issue of actual or constructive knowledge of the Electra Police Department custom of stopping and searching [Bowden] never surfaces."

---

[22] Bowden also appears to argue, albeit in a conclusory fashion and without addressing the fact that almost all of his property was returned, that his rights were violated because the officers exceeded the scope of the warrant when they seized and retained certain items, such as his electronic equipment.  Although he argued below in general terms that the search was "unreasonable," he never made this specific argument; his argument was only that the officers trashed his house and took his dog.  Thus, this argument, having been raised for the first time on appeal, is waived.  *See Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001).

[23] 436 U.S. 658 (1978); *Pineda v. City of Houston*, 291 F.3d 325, 328 (2002) (stating the *Monnell* requirements of: 1) an official policy or custom; 2) actual or constructive knowledge on the part of a policymaker; and 3) that the policy or custom was the "moving force" of the violation).

14

Bowden, in his opening brief to this court, refers to ten events where other individuals filed claims against the City of Electra asserting a variety of allegations, including false arrest, excessive force, and First, Fourth, and Fifth Amendment violations. As the defendants correctly point out, none of this evidence was presented to the district court. Thus, it cannot be considered by this Court.[24] Bowden also argues that the ten previous instances of alleged harassment of Bowden point to constructive knowledge. Although he used these facts below to argue the existence of a policy, he did not use them to establish the existence of knowledge on the part of a policymaker. Therefore, this argument was not made below and cannot be considered here.[25] And even if we considered it, Bowden testified that he never complained to anyone about these instances, making it hard to see how they could show knowledge; his argument, made for the first time on appeal, that the small size of the City police department made complaints unnecessary, is both waived and unconvincing.

Bowden failed to show actual or constructive knowledge of a policymaker. The district court's judgment was correct.

## VII.

Finally, Bowden challenges the district court's denial of his

---

[24] *See, e.g.*, *Garcia v. Am. Marine Corp.*, 432 F.2d 6, 8 (5th Cir. 1970) ("It is fundamental that facts not presented at trial may not be asserted on appeal. Any action on appeal can be properly based only on matters considered at trial; this court may not therefore, reverse a trial court on the basis of facts not in the record.").

[25] Vela, 276 F.3d at 678.

Fourteenth Amendment claim. Bowden appears to have alleged two different Fourteenth Amendment violations: first, a violation of his rights under the "incorporated" Fourth Amendment, which, we have explained, was without merit; and second, a violation of his right to substantive or procedural due process or equal protection.[26] The district court's analysis of the latter claim was, in full, that Bowden "cannot successfully advance a violation of rights under the Fourth Amendment. Summary judgment is granted as to Plaintiff's Fourteenth Amendment Claims. Texas law applies a similar standard for substantive due process claims."

In his opening brief here, Bowden refers to a variety of police action that that he alleges deprived him of "life, liberty, or property" (although he mentions nothing about equal protection). But nowhere in the district court did he make any argument regarding these claims; thus, they are not properly presented on appeal. Moreover, he presents no evidence for these claims distinct from the alleged evidence for the Fourth Amendment claims, which we have already held is inadequate.

## VIII.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[26] In his complaint, he mentions "life," "property," and "his right to substantive procedural [?] due process and equal protection."

16