

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00022-CV

REIDIE JACKSON, TDCJ #1164177, APPELLANT

V.

CAPTAIN VAUGHN, ET AL, APPELLEES

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2012-500,295, Honorable Ruben Gonzales Reyes, Presiding

December 11, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Reidie Jackson, a Texas prison inmate appearing *pro se* and *in forma pauperis,* brought suit under 42 U.S.C. § 1983 against prison employees of the Texas Department of Criminal Justice. He appeals the trial court's judgment dismissing his suit pursuant to Chapter 14 of the Texas Civil Practice & Remedies Code.[1] We will reverse the trial court's judgment and remand the cause.

---

[1] TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.001-.014 (West 2002 & Supp. 2014).

Background

Jackson's original petition complained of the actions of a Captain Vaughn and a Lieutenant Emsoff, and additional defendants whose names he did not then know, sued as John Doe and Jane Doe defendants. The John and Jane Doe defendants were members of a Montford Unit "use of force team." The John Doe defendants forcibly removed Jackson from his cell when he would not vacate it without the return of his personal property. The Jane Doe defendant operated a camera recording the use-of-force event. Jackson's supplemental pleadings identified the members of the use of force team as Nall, Ortega, Guzman, Martinez, and Honesto and the Jane Doe defendant as Mayne.

Jackson complains that Vaughn, Emsoff, and team members violated his Eighth Amendment right to be free from cruel and unusual punishment. The gist of his factual allegations are that the male team members struck him in the ribs and face and "kneed" him in the face, all while he was in restraints. Mayne operated a camera but did not record the event, and Vaughn and Emsoff stood by and watched the event with deliberate indifference to Jackson's safety.

Vaughn and Emsoff filed a motion to dismiss under Chapter 14 of the Civil Practice and Remedies Code alleging procedural and substantive defects in Jackson's pleadings. In November 2012, the trial court conducted a hearing on the motion to dismiss. Jackson appeared in person.[2] No testimonial or documentary evidence was received but the court heard extensive argument. The court initially took the matter

---

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.008 (West 2002) (court may hold a hearing).

under advisement but subsequently granted the motion and signed a "Final Judgment" disposing of all claims and all parties. Findings of fact and conclusions of law were filed. The court found Jackson's suit was not timely filed. It also found Jackson failed to plead facts sufficient to allege an excessive use of force claim and show any personal involvement by Vaughn and Emsoff. Finally, the court found Jackson did not sufficiently allege facts rebutting the qualified immunity defense asserted by Vaughn and Emsoff.

Analysis

First Issue: Untimely Filed Petition

An action brought by an inmate in which an affidavit of inability to pay costs is filed is governed by Chapter 14 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 14.002(a) (West Supp. 2014). We review a trial court's decision to dismiss an action under Chapter 14 for abuse of discretion. *Brewer v. Simental,* 268 S.W.3d 763, 767 (Tex. App.—Waco 2008, no pet.).

By his first issue on appeal, Jackson argues that dismissing his lawsuit as untimely filed was an abuse of discretion. On the record before us, we agree.

Jackson's original petition bears the district clerk's January 6, 2012, file stamp, a date some six months beyond the statutory thirty-one day deadline.[3] Jackson, however, contended he timely filed suit through the prison mail system.

---

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(b) (West 2002) ("A court shall dismiss a claim if the inmate fails to file the claim before the 31st day after the date the inmate receives the written decision from the grievance system"); *Moreland v. Johnson,* 95 S.W.3d 392, 395 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("A suit that is not

3

Appended to the original petition are Jackson's step 1 and step 2 offender grievance forms.  Jackson submitted the step 1 form in March 2011, alleging that prison employees took his property and assaulted him.  He received a response the following month, and filed the step 2 grievance form on May 3, 2011.  The step 2 form does not indicate the date on which the response was returned to Jackson.

The unsworn declaration appended to Jackson's original petition pursuant to Civil Practice and Remedies Code § 14.005(a)(1) states he received the step 2 response on May 29.  The conclusions of law the trial court signed include the statement, "[Jackson] filed his Step 2 grievance . . . on May 3, 2011, and received a decision from the grievance system on May 26, 2011."  May 26 is the date the step 2 response was signed by the prison official.  The trial court thus apparently inferred the grievance form was returned to Jackson the same day.  Accepting the trial court's conclusion, his suit was subject to dismissal unless it was filed by June 27, 2011.[4]

At the hearing on the motion to dismiss, counsel for Vaughn and Emsoff argued dismissal was required because Jackson's original petition was untimely.  Jackson countered that his petition was timely filed when he placed it in the prison mail system or a mailbox on the date his inmate trust account affidavit was notarized, June 23, 2011.

_____

timely filed pursuant to section 14.005(b) is barred and may be dismissed with prejudice").

[4] June 27, 2011 was a Monday.  *See* Tex. Gov't Code Ann. § 311.014(b) (West 2013) ("If the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday").

The trial court, examining his petition, confirmed that the trust account affidavit was notarized on that date.[5]

Vaughn and Emsoff acknowledge Jackson's original petition was received by the district clerk no later than July 1, 2011. On that date, the clerk sent a letter to Jackson stating she would not accept his lawsuit for filing.[6]

Thereafter, Jackson twice petitioned this court for a writ of mandamus compelling the district clerk to file his original petition.[7] We dismissed both petitions on procedural grounds, not reaching their merits. Jackson also sought mandamus relief from a Lubbock County district court. His appellate brief contains, in the statement of facts for his first issue, the statement, "Following the writ filed in the 99th District Court Appellant received a letter from District Clerk Barbara Sucsy informing Appellant to resend his original complaint for filing." Appellees do not contradict the statement, and we accept it

---

[5] The trust account statement does not appear in the clerk's record as filed in this court. The trial court's statements at the motion hearing make clear, however, that the court examined it on that occasion.

[6] Although it is undisputed the district clerk sent such a letter dated July 1, 2011, the letter does not appear in the record of this case. We take judicial notice, however, of the contents of this court's file in *In re Jackson,* No. 07-11-00439-CV, 2011 Tex. App. LEXIS 8720 (Tex. App.—Amarillo, Nov. 2, 2011, orig. proceeding) (mem. op.). Jackson filed the district clerk's letter as a part of the mandamus record in that original proceeding. The letter expresses the district clerk's understanding that she was precluded by a local rule of the district courts from opening a cause with John Doe or Jane Doe defendants, and without a first name for Captain Vaughn.

[7] *In re Jackson,* No. 07-11-00439-CV, 2011 Tex. App. LEXIS 8720 (Tex. App.—Amarillo, Nov. 2, 2011, orig. proceeding) (mem. op.); *In re Jackson,* No. 07-11-00487-CV, 2011 Tex. App. LEXIS 9939 (Tex. App.—Amarillo Dec. 16, 2011, orig. proceeding) (per curiam, mem. op.).

as true. TEX. R. APP. P. 38.1(g).[8] Consistent with the district clerk's instruction to re-send his original pleading, on the original petition Jackson filed in January 2012, Jackson's signatures on his petition, his declaration of previous filings[9] and his declaration under section 14.005(a)(1) all are dated June 21, 2011.

Appellees argue Jackson's contention is like that presented by the plaintiff in *Doyle v. Lucy*, No. 14-03-00039-CV, 2004 Tex. App. LEXIS 2790 (Tex.App.—Houston [14th Dist.] March 30, 2004, no pet.), who asserted the operation of section 14.005(b) should be tolled in his case because he was misled by the sheriff's and district clerk's offices about the location of filing. *Id.* at 11-12. We disagree with appellees' argument. Jackson is not contending he should be excused from the thirty-one-day deadline of section 14.004(b). He contends he complied with it, by timely delivering his pleading into the prison mail system.

Despite contrary statements in the findings and conclusions the trial court signed,[10] review of the entire record leaves us with doubts the trial court dismissed Jackson's suit because it was untimely filed. *See Warner v. Glass,* 135 S.W.3d 681, 684 (Tex. 2004) (per curiam) ("Therefore, a *pro se* inmate's claim under section 14.004

---

[8] Jackson's statement is confirmed also by the copy of the letter, which appears in the appendix to his appellant's brief. The letter is dated December 16, 2011, is addressed to him from the district clerk, references Jackson's mandamus proceedings in the district court and this court, and begins with the instruction, "Please re-send the original petition for filing."

[9] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.004 (West Supp. 2014).

[10] The findings and conclusions do not address the undisputed fact Jackson's original petition was received by the district clerk no later than July 1, 2011. The findings and conclusions state merely that Jackson received a response to his step 2 grievance on May 26, 2011 and filed his petition on January 6, 2012.

of the Inmate Litigation Act is deemed filed at the time the prison authorities duly receive the document to be mailed"). Appellees argued Jackson failed to meet the deadline, but pointed to no evidence contradicting his declarations that he delivered his original petition for mailing on June 23, 2011, the same day the prison official notarized his trust account statement. Given that absence of contrary evidence and the persuasive evidence supporting Jackson's contention he delivered his pleading on June 23, coupled with the undisputed presence of the pleading in the district clerk's hands no later than July 1, to any extent the trial court's order of dismissal depends on a determination that Jackson did not timely file his suit, the order is an abuse of discretion.

We sustain Jackson's first issue.

Substantive Claims: No Arguable Basis in Law

Fourth Issue

By his fourth issue Jackson challenges the trial court's determination that his suit had no arguable basis in law. In a conclusion of law, the trial court found Jackson's claims were frivolous because they lacked an arguable basis in law. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(b)(2) (West 2002). Whether a claim has an arguable basis in law is a legal question we review *de novo. Hamilton v. Pechacek,* 319 S.W.3d 801, 809 (Tex. App.—Fort Worth 2010, no pet.). In conducting our review, we take as true the allegations of the inmate's petition and review the types of relief and causes of action set out therein. *Id.* That is, we review the inmate's petition to determine whether, as a matter of law, it states a cause of action authorizing relief. *Id.* A claim lacks an

arguable basis in law if it is an "indisputably meritless legal theory." *Id.* Bearing in mind these standards, we turn to Jackson's relevant allegations of fact.

Jackson's pleadings allege that on March 16, 2011, at a guard's direction Jackson packed his property and was transported from the Clements Unit, his place of confinement, to the Montford Unit for a medical evaluation. Among the items Jackson packed were affidavits he intended to use in seeking post-conviction relief. On arrival at the Montford Unit, Jackson was separated from his property.

Jackson later told a guard he wished to refuse medical treatment and return to his unit. He signed a written refusal of treatment. He complained to a guard that he had not received his property or a receipt. Later in the day he demanded to speak with a ranking officer. When this request was denied Jackson refused to surrender the handcuffs that restrained him.

According to procedure, the guard notified an officer of Jackson's refusal. Vaughn and Emsoff responded. Vaughn assured Jackson his property would be on the bus for the return trip to his unit. At that, Jackson relinquished the handcuffs and remained confined in a cell. He continued to ask about a receipt for his property.

The following day Jackson refused preparation for the bus trip back to his unit. Ranking officers were notified and preparations for forcing Jackson's compliance began. Vaughn and Emsoff again responded to the call. Jackson accused them of lying to him the previous day about his property. They answered with "vulgar language." Emsoff told Jackson if he did not get on the bus "he would make sure the camera couldn't see while the team kicked [Jackson's] ass."

8

When the use-of-force team, a camera operator, and Vaughn and Emsoff arrived at Jackson's cell, he was wearing boxer shorts, socks, and Adidas shoes. He barricaded the door with a mattress, then moved to the side and placed his hands in the air in surrender. A team member pushed him to the floor. Jackson obeyed commands to lie prone with his hands behind his back.

Jackson's pleadings further allege that Vaughn and Emsoff watched as team members placed mechanical restraints on Jackson. The team member holding Jackson's head kneed him in the face and three others punched his ribs and face. One "sadistically and maliciously began punching [Jackson's] face and mouth with a closed fists (sic)." Another team member "holding [Jackson's] head or shoulder pushed extremely hard on his head trying to hold his head in place." A team member twisted Jackson's left leg tearing away his shoe sole. Emsoff "smirked" as Jackson was taken away. During transit back to his unit, Jackson noticed his dental plate was broken and his face was swelling. Jackson also complained of chipped or cracked teeth and other dental problems he attributed to the incident. Since the incident Jackson "has been having progressively blurred vision."

*Excessive Use of Force and Bystander Liability*

Section 1983 provides a cause of action against "every person who," under color of state law, "subjects, or causes to be subjected," another person to a deprivation of a federally protected right. 42 U.S.C. § 1983. Section 1983 does not create a substantive right but provides a remedy for the rights it designates. *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir. 1989). A plaintiff in a 1983 case must first

9

identify a specific constitutionally protected right that was infringed. *Kesler v. King,* 29 F. Supp. 2d 356, 366 (S.D. Tex. 1998) (citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).

Jackson alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishments. The Eighth Amendment proscribes "the imposition of pain totally without penalogical (sic) justification." *Evans v. Dugger,* 908 F.2d 801, 803 (11th Cir. 1990) (citations omitted). Instances of "physical abuse directed at [a] prisoner after he terminates his resistance to authority would constitute an actionable eighth amendment violation." *Hope v. Pelzer,* 536 U.S. 730, 731, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Ort v. White,* 813 F.2d 318, 324 (11th Cir. 1987)).

When an inmate brings an excessive force section 1983 claim against a prison official individually, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). An Eighth Amendment excessive force claim against a prison official requires an inmate to demonstrate whether subjectively the defendant acted with a sufficiently culpable state of mind and objectively whether the force applied was harmful enough to amount to a constitutional violation. *Hudson,* 503 U.S. at 8.

Additionally, an officer present at the scene who fails to take reasonable measures to protect an inmate from another officer's use of excessive force may incur section 1983 liability. *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995). Establishing bystander liability requires a showing that an officer knows another officer is committing

10

a constitutional violation, has a reasonable opportunity to prevent the harm, and chooses not to act. *Kitchen v. Dallas County,* 759 F.3d 468, 481 (5th Cir. 2014) (citing *Sanchez v. City of Chicago,* 700 F.3d 919, 926 (7th Cir. 2012)). *See Estate of Davis v. Delo,* 115 F.3d 1388, 1395 (8th Cir. 1997) (explaining "[a] prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate" and affirming the trial court's findings of liability by prison physical restraint team members who observed a corrections officer apply excessive force to an inmate yet did nothing to protect the inmate from the substantial risk of serious harm posed by the officer's blows); *Kesler v. King,* 29 F.Supp.2d 356, 369-72 (S.D.Tex. 1998) (citing *DeShaney v. Winnebago County Social Services Dept.,* 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)) (explaining "the duty to intercede is heightened in a prison setting, where the state has restrained an individual's liberty to such a degree that he can no longer care for or protect himself"). Bystander liability may attach regardless of whether the directly-responsible officer can be specifically identified. *Kitchen,* 759 F.3d at 481*.*

Jackson's pleadings allege he was beaten by team members acting "maliciously and sadistically" merely to cause him harm. Taking Jackson's plead facts as true, as we must, his pleadings sufficiently allege a section 1983 excessive force claim and a bystander claim. Accordingly, the trial court abused its discretion by dismissing Jackson's suit against the defendants on the ground the suit lacked a basis in law.

*Qualified Immunity*

The trial court found Vaughn and Emsoff were "entitled to qualified immunity." It stated in a conclusion of law that Jackson had not "alleged facts sufficient to overcome Defendants' qualified immunity."[11]

The affirmative defense of qualified immunity is available in a section 1983 claim to a government official performing discretionary functions. *Escobar v. Harris County,* 442 S.W.3d 621, 629-30 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Gomez,* 446 U.S. at 640). To prevail on the defense, the government official's conduct must not violate clearly established constitutional or statutory rights of which a reasonable person would be aware. *Padilla v. Mason,* 169 S.W.3d 493, 502 (Tex. App.—El Paso 2005, pet. denied); *Scott v. Britton,* 16 S.W.3d 173, 180 (Tex. App.—Houston [1st Dist.] 2000, no pet.). A legal right is "clearly established" when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Hill v. Trinci,* No. 14-10-00862-CV, 2012 Tex. App. LEXIS 5934, at *9 (Tex. App.—Houston [14th Dist.] July 24, 2012, no pet.) (mem. op.).

---

[11] In another conclusion of law the trial court stated Jackson was obligated "to allege facts which show a waiver of qualified immunity." We do not believe Jackson's pleading obligation included anticipating allegations of qualified immunity as an affirmative defense. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). (explaining that because qualified immunity is a defense "[i]t is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith"). But our analysis makes resolution of this question unnecessary.

Our review here concerns merely whether, as alleged, Jackson's claims lack a basis in law.  The question whether further proceedings will confirm the truth of either party's contentions is beyond the scope of our review.  This said, on March 17, 2011, it was settled that the Eighth Amendment prohibited the kind of malicious and sadistic application of force Jackson has alleged.  To the extent the trial court based its dismissal decision on the sufficiency of Jackson's pleadings vis-à-vis the official immunity claim of Vaughn and Emsoff, it abused its discretion.

### Conclusion

We reverse the order of the trial court and remand the case for further proceedings.  *See* TEX. R. APP. P. 43.2(d).


James T. Campbell
Justice