**Harvey Leroy SOSSAMON III # 1120297**

v.

**The LONE STAR STATE OF TEXAS, Christina Melton Crain, Cathy Clement, Brad Livingston, Doug Dretke, Rev. R.C. Murphy, Robert Eason, Stacy L. Jackson, and Paul J. Klien.**

No. A–06–CA–003–SS.

United States District Court, W.D. Texas, Austin Division.

March 28, 2007.

658

Scott Medlock, Texas Civil Rights Project, Austin, TX, for Plaintiff.

Kimberly Fuchs, Office of the Texas Attorney General, Austin, TX, for Defendant.

## *ORDER*

SAM SPARKS, District Judge.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Plaintiff's Motion for Partial Summary Judgment (Document No. 23); Defendants' Partial Motion to Dismiss (Document No. 28); Defendants' Motion for Summary Judgment (Document No. 29); Plaintiff's response thereto (Document No. 33); Plaintiff's Motion for Dismissal Under the Texas Religious Freedom Act, Against the Defendants in their Personal and Individual Capacities (Document No.

43); and Plaintiff's Motion for Partial Dismissal and Withdrawal to Amend the Original Complaint (Document No. 48). Plaintiff,· proceeding pro se, has been granted leave to proceed in forma pauperis.

## I. BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Robertson Unit of the Texas Department of Criminal Justice–Correctional Institutions Division. Plaintiff files this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc through § 2000cc–5; and the Texas Religious Freedom Act ("TRFA"), Tex. Civ. Prac. & Rem. Code Chapter 110. Plaintiff alleges Defendants have violated his rights under the First, Eighth, and Fourteenth Amendments, RLUIPA and TRFA by denying him the opportunity to participate in congregational Christian services: (1) in the chapel at the Robertson Unit; and (2) while on cell restriction at the Robertson Unit. Plaintiff seeks declaratory, injunctive and compensatory relief. He sues the Lone Star State of Texas, Christina Melton Crain (Chairperson of the Texas Board of Criminal Justice), Cathy Clement (Assistant Regional Director for Region VI of TDCJ), Brad Livingston (Executive Director of TDCJ), Doug Dretke (former Director of the Correctional Institutions Division of TDCJ), Reverend R.G. Murphy (Region V Program Administrator for the Chaplaincy Department, Rehabilitation and Reentry Programs Director of TDCJ), Robert Eason (Senior Warden at the Robertson Unit), Stacy L. Jackson (Assistant Warden at the Robertson Unit), and Paul J. Klien (Volunteer Chaplain at the Robertson Unit). Plaintiff sues the defendants in their individual and official capacities.

Plaintiff was granted leave to amend his complaint. Subsequently, Plaintiff informed the Court he would not be able to meet the deadline for amending his complaint and requested his request to amend be withdrawn. Plaintiff further requested the Court to go forward with its decisions in this case based on his original complaint. However, Plaintiff moved the Court to dismiss his claims brought pursuant to the TRFA against the defendants in their individual capacities. He further moved the Court to dismiss his claims brought against Defendants Murphy, Jackson and Klien. Plaintiff's requests to dismiss will be granted.

In his original complaint Plaintiff alleges inmates are denied total access to the prison chapel at the Robertson Unit for purposes of religious expression. He further claims Plaintiff and religious inmates wanting access to the chapel are victims of discrimination. Plaintiff explains prison officials allow inmates access to the chapel for non-religious purposes. Plaintiff contends Defendants have exaggerated the need for security in the chapel. Plaintiff complains Defendants have evicted God out of His house and reduced Christian worship services to attendance inside a multi-purpose room. According to Plaintiff, the multi-purpose rooms contain no traditional Christian symbols or furnishings. Plaintiff further asserts their services or Bible studies are often interrupted by security personnel or loud yelling just outside the window to the room. Plaintiff also claims inmates are retaliated against and harassed by security personnel if an inmate worker does not stop worshiping and report to work as ordered. Plaintiff claims the retaliation and harassment may consist of a strip search. However, Plaintiff does not allege he has personally been subjected to a strip search for failing to report to work, and he did not raise this issue in his prison grievances.

Plaintiff further alleges Christians are discriminated against at the Robertson Unit because they are not provided special accommodations to hold religious ceremonies and do the necessary rituals in the chapel or any other sanctified place for Easter week and the Sunday service unlike Muslims, who receive special accommodations during Ramadan and other Muslim holy days. Plaintiff further complains there are no special meals for Christians to observe any religious holy day or period.

Plaintiff contends Defendants have subjected him to cruel and unusual punishment by causing him spiritual, mental, emotional and physical pain. Plaintiff explains this punishment was caused by denying him the most basic opportunities to express and practice his Christian faith inside the prison sanctuary. Plaintiff asserts he was forced to accept and witness the eviction of God from the chapel and the reducing of God to a time-share deity with anger management prisoners in the multi-purpose room empty of any Christian symbols or furnishings.

In addition to being denied access to the chapel, Plaintiff alleges inmates subjected to cell restrictions as a result of a disciplinary violation are not allowed to attend church services. According to Plaintiff, prisoners are allowed to leave their cells while on cell restriction for many other purposes including going to work, eat, shower, medical lay-ins, educational classes, the law library and other secular activities.

According to Plaintiff, on September 15, 2005, Plaintiff was found guilty of a minor rule infraction. As result, he received 15 days cell restriction and 15 days loss of commissary privileges. Because of the cell restriction, he was denied permission to attend religious services on September 18, 2005, and September 25, 2005. Plaintiff grieved the issue, and was told by Warden Eason that he would look into the cell restriction policy.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment arguing TDCJ's policies concerning religious practices are reasonably related to legitimate penological interests—safety and security—and do not violate Plaintiff's constitutional rights. Defendants contend the policies are justified by compelling state interests and there is no other way, let alone a less restrictive way, to balance TDCJ's accommodation of religions with the need to ensure the safety and security of offenders and correctional personnel.

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment seeking summary judgment on his claims arising from the cell restriction policy and the denial of access to the chapel.

## IV. ANALYSIS

### A. *Standard of Review Under Fed. R.Civ.P. 56(c)*

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996); *Int'l Shortstop. Inc. v. Rally's Inc.,* 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem*

*Computers, Inc.,* 63 F.3d 429, 433 (5th Cir.1995); FED.R.CIV.P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322, 106 S.Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323–24, 106 S.Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses ... designating specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. FED.R.CIV.P. 56(e); *Tubacex v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990) (citing (*Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. *Blackwell v. Barton,* 34 F.3d 298, 301 (5th Cir.1994).

## B. *Eleventh Amendment Immunity*

 Plaintiff's claims for monetary damages against the State of Texas and the defendants sued in their official capacities are barred under the Eleventh Amendment because such an action is the same as a suit against the sovereign. *Pennhurst State School Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. *Port Auth. Trans–Hudson v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1871, 109 L.Ed.2d 264 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Texas,* 27 F.3d 1083.1087(1994). This includes Plaintiff's request for monetary damages under RLUIPA.

RLUIPA does not contemplate recovering damages from individuals, such as the defendants. Instead, RLUIPA provides for "appropriate relief against a government." 42 U.S.C. § 2000cc–2(a). The remedies provided in RLUIPA are complete and omit any mention of damages. The Eastern District of Texas has noted it is unclear whether RLUIPA authorizes damages in addition to injunctive relief. *Gooden v. Crain,* 405 F.Supp.2d 714, 723 (E.D.Tex.2005). The Middle District of Alabama and the Northern District of Illinois likewise have noted it was unclear whether damages are available. *Smith v. Haley,* 401 F.Supp.2d 1240, 1245–47 (M.D.Ala.2005); *Agrawal v. Briley,* No. 02–C–6807, 2003 WL 164225 at *2 n. 2 (N.D.Ill. Jan. 22, 2003). However, other district courts disagree. *See Shidler v. Moore,* 409 F.Supp.2d 1060, 1071 (N.D.Ind. 2006) (recognizing RLUIPA claims for in-

dividual money damages), *Charles v. Verhagen,* 220 F.Supp.2d 937, 953 (W.D.Wis. 2002) (same), and *Orafan v. Goord,* No. 00CV2022, 2003 WL 21972735, at \*9 (N.D.N.Y. Aug. 11, 2003) (same).

Even if monetary damages are available under RLUIPA, damages are not recoverable from the State or the defendants in their official capacities because a state's Eleventh Amendment immunity from suit for damages is not waived in RLUIPA. The Fourth Circuit in a well-reasoned and thorough opinion recently concluded RLUIPA's "appropriate relief against a government" language falls short of the unequivocal textual expression necessary to waive state immunity from suits for damages. *See Madison v. Commonwealth of Va.,* 474 F.3d 118 (4th Cir.2006). Similarly, in *Webman v. Federal Bureau of Prisons,* 441 F.3d 1022, 1026 (D.C.Cir. 2006), the D.C. Circuit recently held RFRA's identical "appropriate relief" provision insufficient to waive federal sovereign immunity for damages suits. Accordingly, Plaintiff's claims for monetary damages against the State and the defendants in their official capacities are barred by Eleventh Amendment immunity.

## C. *Qualified Immunity*

The defendants in their individual capacities assert their entitlement to qualified immunity with respect to Plaintiff's claims brought against them for monetary damages. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Immunity in this sense means immunity from suit, not merely from liability. *Jackson v. City of Beaumont,* 958 F.2d 616 (5th Cir.1992). "Qualified immunity is designed to shield from civil liability all but

the plainly incompetent or those who violate the law." *Brady v. Fort Bend County,* 58 F.3d 173, 174 (5th Cir.1995). In general, "qualified immunity represents the norm." *Id.* With respect to a ruling on qualified immunity, the first question a court should address is "whether the plaintiff has alleged a violation of a clearly established constitutional right." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Hale v. Townley,* 45 F.3d 914, 917 (5th Cir.1995). If the Plaintiff has alleged a constitutional violation, the court must then determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions. *Hale,* 45 F.3d at 917, citing *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993), *cert. denied,* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994); *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir. 1993).

Claims of qualified immunity require a two step analysis. As a threshold matter, the court must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001): *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir.2001). If the allegations do not establish the violation of a constitutional right, the official is entitled to qualified immunity. *Saucier,* 533 U.S. at 201, 121 S.Ct. at 2156. If the allegations could make out a constitutional violation, the court must ask whether the right was clearly established—that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. at 2156. If an official makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. *Id.* at 205, 121 S.Ct. at 2158. As explained below,

Plaintiff has failed to establish a violation of his rights. Accordingly, the defendants sued in their individual capacities for monetary damages are entitled to qualified immunity.

### D. *First Amendment Claims*

Plaintiff complains the defendants violated his right to religious freedom by: (1) denying him access to the chapel and (2) denying him access to religious services while on cell restriction.

 The Constitution requires an inmate be given a reasonable opportunity to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). An inmate retains his First Amendment right to the free exercise of his religion, subject to reasonable restrictions and limitations necessitated by penological goals. *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349–50, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Prison officials have a duty to accommodate an inmate's religious beliefs unless there is a legitimate penological interest which prevents such accommodation. *Eason v. Thaler,* 14 F.3d 8, 10 (5th Cir.1994). If a prison regulation impinges on an inmate's First Amendment rights, the regulation is valid only if it is reasonably related to a legitimate penological interest. *Turner,* 482 U.S. at 87, 107 S.Ct. 2254. If the court is reviewing action taken by prison officials rather than a regulation, the same standard is applicable to determine whether the prison official's act is constitutionally permissible. *Jackson v. Cain,* 864 F.2d 1235, 1248 (5th Cir.1989).

 In determining whether a regulation or policy is a valid restriction reasonably related to a legitimate penological interest, the Court considers the following factors:

(1) whether there exists a valid, rational connection between a restriction and the governmental interest invoked to justify it;

(2) the availability of an alternative means to exercise the restricted right;

(3) the impact on guards, other inmates, and the allocation of prison resources that would result from accommodating the asserted right; and

(4) whether there are ready alternatives to the restriction.

*Turner,* 482 U.S. at 89–91, 107 S.Ct. 2254; *Adkins v. Kaspar,* 393 F.3d 559, 564 (5th Cir.2004).

 In support of summary judgment, Defendants present the following affidavit testimony of Bill Pierce, Director of the TDCJ Chaplaincy Department:

> TDCJ Executive Directive ED—07.29, Religious Policy Statement, mandates that we extend to all offenders as much freedom and opportunity as possible for pursuing individual beliefs and practices, consistent with agency security, safety, order, and rehabilitation concerns. TDCJ provides many opportunities through which an offender may exercise his faith and grow spiritually. Policies concerning religious programming are contained in TDCJ Administrative Directive AD—07.30, "Procedures for Religious Programming."

Defendants also present the following affidavit testimony of Chaplain Archie Scarborough:

> TDCJ recognizes the significance of purposeful religious ceremony as an important component of numerous religions and tries to provide offenders reasonable opportunities to observe or participate in religious ceremonies consistent with the reasonable constraints of sound penological practices. The extent and frequency for observance of

any religious ceremony is determined by consideration of several factors, including the significance of the ceremony, the availability of appropriate supervision, time and space requirement, and the security concerns of the facility. Congregational religious services, activities and meetings are governed by unit or facility rules, regulations, and policies with regard to staff and volunteer safety, security and orderly conditions of the unit, and with regard to offender conduct. Factors considered in scheduling religious activities include staff supervision requirements, unit and individual security concerns as set forth in agency policy, and the availability of TDCJ approved religious program volunteers to assist.

Chaplain Scarborough acknowledges the chapel at the Robertson Unit may not be used for religious purposes. He states:

As a result of this prohibition, we conduct over fifty religious programs each month in the buildings used to house offenders. I should point out at this point that it is not a basic tenant of the Christian faith that services must be held in particular locations. I should also point out that if we conducted all our religious programs in the chapel, we would not be able to afford offenders the many activities we now provide to them in the buildings where they live.

Chaplain Scarborough provided a schedule for a typical week of services in the building in which Plaintiff is housed. Included in the schedule is over 25 hours of Christian (non-Catholic) programs and services. In addition, Chaplain Scarborough explains TDCJ allows all offenders to worship according to their faith preference in their cells using allowed items such as sacred texts, devotional items, and materials. Chaplain Scarborough concludes TDCJ provides a wide variety of materials, programs, services, and activities developed to meet the spiritual needs of offenders.

In further support of their Motion for Summary Judgment Defendants also present the following affidavit testimony of Senior Warden Eason:

Allowing offenders from all the buildings to gather together for congregational religious services at the chapel or another meeting place would defeat our efforts to keep hostile gang members apart. Further, movements of offenders from one area of the prison to another create the greatest security risks for the staff. You always want to retain control and keep inmates in small groups so all group movements must be properly supervised. Taking into account the personnel shortages and lack of experienced staff at the Robertson Unit, it is important to the security of the unit to keep movements to a minimum.

Further, the chapel at the Robertson Unit measures approximately 30 by 36 feet and can accommodate approximately 75 people. It is not large enough to hold all the offenders who routinely attend Christian (non[-R]oman Catholic) services.

\* \* \*

As a result of these safety and security concerns—gang activities; unnecessary offender movements; chapel size, location, and design; and the riot at the McConnell Unit—we do not use the chapel at the Robertson Unit for any religious services. We use the room as a library for religious books, as a meeting place for the staff, and as a teleconferencing facility.

With respect to the cell restriction policy, Warden Eason states he directed that beginning in October 2005, cell restrictions would not be imposed on offenders at the custody level held by Plaintiff. Warden

Eason explains his personal experience is that the only real effect of cell restrictions is that offenders cannot participate in church services. He opines, if offenders need to be restricted to their cells, then their custody level should be changed to a more restrictive level.

The Fifth Circuit has upheld the constitutionality of TDCJ's religious accommodation policy as rationally related to legitimate governmental interests. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854 (5th Cir.2004). The Fifth Circuit specifically held prison staff and space limitations, as well as financial burdens, are valid penological interests. *Id.* at 861.

Based on the summary judgment record before it, the Court finds TDCJ's accommodation policies and practices as set forth in these affidavits satisfy the *Turner* factors as to Plaintiff's complaints. The pertinent question is not whether Plaintiff has been denied specific religious accommodations, but whether, more broadly, the prison affords him opportunities to exercise his faith. *Freeman*, 369 F.3d at 861. Plaintiff does not assert Defendants denied or restricted his right to practice his religion in his cell while on cell restriction, or he had no other alternative means of practicing his religious faith. Plaintiff also does not assert Defendants fail to provide numerous alternative opportunities to worship together in their housing areas. Nor has he pointed to some obvious regulatory alternative that fully accommodates his asserted rights while not imposing more than a de minimis cost to TDCJ's valid penological goal of maintaining prison security and discipline and remaining within its financial, personnel, and space restraints, and nondiscriminatory policy. In sum, Plaintiff shows no violation of his free exercise rights.

### E. *Eighth Amendment Claims*

Plaintiff contends the denial of religious services in the chapel has subjected him to cruel and unusual punishment. The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citations omitted). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Id.* Being denied access to the prison chapel and missing two Sunday services due to cell restrictions do not amount to violations of the Eighth Amendment.

### F. *Fourteenth Amendment Claims*

Plaintiff claims Defendants violated his equal protection rights by (1) allowing other inmates to use the chapel for non-religious purposes and (2) allowing Muslim inmates special privileges with respect to their religion.

To maintain his claims for violation of equal protection under the Fourteenth Amendment, Plaintiff must allege and prove purposeful discrimination by Defendants resulting in a discriminatory effect among persons similarly situated. *See Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992). The Fourteenth Amendment does not demand that every religious sect or group within a prison, however few in numbers, must have identical prison facilities or personnel. *Freeman*, 369 F.3d at 862. Rather, prison administrators must provide inmates with

reasonable opportunities to exercise their religious freedoms. *Id.* at 863.

The fact that TDCJ's religious accommodation and related policies and regulations adversely impact Plaintiff and his religious practices does not, by itself, establish a Fourteenth Amendment violation. "[D]isparate impact, alone, cannot suffice to state an Equal Protection violation; otherwise, *any* law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir.1997) (emphasis in original). To maintain an equal protection claim, Plaintiff must allege and prove he received treatment different from that received by similarly situated individuals and the unequal treatment stemmed from a discriminatory intent. *Taylor v. Johnson,* 257 F.3d 470, 472 (5th Cir.2001).

Plaintiff complains Defendants do not allow any religious services in the chapel. He does not claim Defendants allowed some religious groups to congregate in the chapel while his religious group was not. That the chapel is used for non-religious purposes does not establish an equal protection claim. To state a claim under the Equal Protection Clause, a plaintiff must allege that similarly situated individuals have been treated differently. *Yates v. Stalder,* 217 F.3d 332, 334 (5th Cir.2000). The inquiry focuses on whether the plaintiff is similarly situated to another group for purposes of the challenged governmental action. *Yates,* 217 F.3d at 334. The summary judgment evidence clearly shows TDCJ does not allow any religious services in the chapel.

Discriminatory purpose in an equal protection context implies the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Johnson v. Rodriguez,* 110 F.3d at 306.

Plaintiff does not present any summary judgment evidence that TDCJ's refusal to hold religious services in the chapel is intended to discriminate against inmates of one religious faith or another. Defendants' evidence, on the other hand, demonstrates that TDCJ's refusal to hold religious services in the chapel is based on space limitations and security concerns.

This same reasoning holds against Plaintiff's claims regarding cell restrictions. Plaintiff provides no summary judgment evidence of "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins,* 393 F.3d at 566. Cell restrictions apply to all faiths.

Plaintiff also complains Muslim inmates receive special privileges such as diet. Certain religious rights of TDCJ Muslim inmates are governed by a consent decree entered in *Brown v. Beto,* No. 4:74–CV–069 (S.D.Tex.1977). *See Adkins,* 393 F.3d at 566 (noting that all religious groups, except Muslims, must have a volunteer present, and that members of the Yahweh Evangelical Assembly ("YEA") were not denied equal protection when required to have a volunteer or church elder present at all meetings). Moreover, Plaintiff does not allege Christians require a special diet as part of their religion.

### G. *RLUIPA and TRFA*

The RLUIPA, codified at 42 U.S.C. § 2000cc, provides in pertinent part as follows:

§ 2000cc–1. Protection of religious exercise of institutionalized persons

(a) General rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, un-

less the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

An almost identical provision appears in TRFA. *See* TEX. CIV. PRAC. & REM.CODE Ann. § 110.003(a) & (b) (Vernon 2005). Both statutes prohibit the State from imposing a "substantial burden" on the practice of religious faith. A "religious exercise" for purposes of the RLUIPA includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). The Supreme Court recently made it clear that under RLUIPA, accommodation of religious observances is not elevated over a prison's need to maintain order and safety. *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 2122, 161 L.Ed.2d 1020 (2005).

█ The Fifth Circuit has determined that governmental action or regulation creates a "substantial burden" on a religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins,* 393 F.3d at 570. A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it "merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.*

In this case, Plaintiff fails to present prima facie evidence that Defendants have "substantially burdened" the practice of his religion by refusing to use the chapel for religious services. That Plaintiff's religious group must use classroom facilities for religious services does not create a substantial burden on Plaintiff's religious practices. The summary judgment evidence shows numerous hours of religious services and instruction are provided to inmates sharing Plaintiff's faith. Moreover, it is clear from the summary judgment evidence that Defendants provide access to religious books and materials to its prisoners for the practice of their faith.

Plaintiff also has not presented any prima facie evidence that Defendants have "substantially burdened" the practice of his religion by not allowing Plaintiff to attend religious services during his cell restriction for 15 days. Plaintiff properly grieved the issue, and as a result, Warden Eason directed that beginning in October 2005, cell restrictions would not be imposed on offenders at the custody level held by Plaintiff. In this instance, the prison grievance system provided Plaintiff the relief he sought.

Alternatively, even assuming Plaintiff were to establish these instances as substantial burdens on the practice of his religion, Defendants' financial, safety, space, and security concerns for the prison, its inmates, and employees, and the goal of maintaining a neutral policy of religious accommodation for all recognized religious faiths, are compelling governmental interests. Defendants have shown, and Plaintiff has not shown to the contrary, that Defendants' regulations and policies are the least restrictive means of furthering those compelling governmental interests. *See Adkins,* 393 F.3d at 567–68. As the Supreme Court noted in *Cutter,* "Should inmate requests for religious accommodations become excessive, impose unjustified burden on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." 125 S.Ct. at 2125. No RLUIPA or TRFA violations have been shown.

## V. CONCLUSION

Accordingly, Defendants are entitled to summary judgment.[1]

It is therefore **ORDERED** that the Motion for Dismissal Under the Texas Religious Freedom Act, Against the Defendants in their Personal and Individual Capacities [# 43], filed by Plaintiff on July 21, 2006, is **GRANTED.**

It is further **ORDERED** that Plaintiff's claims brought pursuant to the Texas Religious Freedom Act against the defendants in their individual capacities are **DISMISSED WITHOUT PREJUDICE.**

It is further **ORDERED** that the Motion for Partial Dismissal and Withdrawal to Amend Original Complaint [# 48], filed by Plaintiff on August 24, 2006, is **GRANTED.**

It is further **ORDERED** that Plaintiff's claims brought against Defendants Murphy, Jackson and Klien are **DISMISSED WITHOUT PREJUDICE.**

It is further **ORDERED** that the Partial Motion to Dismiss [# 28], filed by Defendants on April 6, 2006, is **GRANTED.**

It is further **ORDERED** that Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 and RLUIPA against the State of Texas and the defendants in their official capacities for monetary damages are **DISMISSED WITHOUT PREJUDICE** as barred by the Eleventh Amendment.

It is further **ORDERED** that the Motion for Partial Summary Judgment [# 23], filed by Plaintiff on March 14, 2006, is **DENIED.**

It is further **ORDERED** that the Motion for Summary Judgment [# 29], filed by Defendants on April 6, 2006, is **GRANTED** with respect to Plaintiff's remaining claims.

It is further **ORDERED** that all remaining pending motions are **DISMISSED AS MOOT.**

---

1. The Court also notes to the extent Plaintiff seeks injunctive relief under the TRFA, a federal court does not have jurisdiction to enjoin the defendants based on state law. *See Earles v. State Bd. of Certified Publ. Accountants of La.,* 139 F.3d 1033, 1039 (5th Cir.1998).