## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20465

United States Court of Appeals
Fifth Circuit

**FILED**
July 1, 2020

Lyle W. Cayce
Clerk

EBONI NICOLE BALDWIN,

> Plaintiff - Appellee

v.

LATOISHA DORSEY,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, JONES, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Harris County sheriff's deputy Latoisha Dorsey appeals a denial of summary judgment, contending that qualified immunity shields her from liability based on Eboni Baldwin's claim under 42 U.S.C. § 1983. Baldwin maintains that Dorsey was deliberately indifferent to her serious medical needs resulting from an alleged psychological crisis. Yet Baldwin has failed to show either that Dorsey's actions, which led to a three-hour delay in medical treatment, manifested deliberate indifference or that Dorsey's conduct was objectively unreasonable under clearly established law. It follows that Dorsey is entitled to qualified immunity. We **REVERSE** and **REMAND** for entry of an order of dismissal.

No. 19-20465

## BACKGROUND

Around midnight on September 27, 2014, a concerned citizen approached a car stopped at a traffic light in Houston. Finding Baldwin, the driver, awake but incoherent, he called an ambulance. When emergency personnel arrived, Baldwin told an emergency medical technician ("EMT") that she had post-traumatic stress disorder ("PTSD") and that she had taken four sleeping pills. The EMT noticed two pills in Baldwin's hand and an open water bottle in her lap.

Soon afterwards, Deputy Dorsey and other deputies arrived on scene. Dorsey observed that Baldwin was intermittently unconscious and learned from the EMT that she had been holding the sleeping pills and an open water bottle. Although an EMT told Baldwin he would like to take her to the hospital in an ambulance, she refused that request. Dorsey and other deputies removed Baldwin from her car and placed her, handcuffed, in the back of a patrol car. The deputies searched Dorsey's car, which clearly displayed a disability placard in the front window. During this time, Baldwin told someone with a male voice that she had PTSD.

After the search, Dorsey drove Baldwin to Houston Police Central Intox, where law enforcement administer intoxication tests. En route, Baldwin, who was now plainly likely to face charges, told Dorsey that she felt suicidal and asked to be taken to the hospital.[1] Dorsey refused and proceeded to the testing facility. On arrival, Dorsey handcuffed Baldwin to a bench in a cell, where Baldwin stayed for two hours while she waited for a blood draw.

After the blood draw, Dorsey took Baldwin to Harris County Jail. At booking, Baldwin repeated her request to go to the hospital because she felt

---

[1] Dorsey denies this allegation, but on review of denial of summary judgment, we take the non-movant's allegations to be true.

2

suicidal, and a jail nurse was called over.  The nurse called in a doctor, who determined that the jail would not accept Baldwin until she had been cleared by a hospital.  Dorsey then took Baldwin to the hospital, where Baldwin's screening and treatment lasted less than an hour.  Medical records from the visit include a struck-through notation that Baldwin was having suicidal thoughts.  Those records also note that Baldwin "appear[ed] in no acute distress" and was "alert," "pleasant," "cooperative," and "calm."  After the hospital visit, Dorsey returned Baldwin to jail.  Sometime later, Baldwin was released, her criminal charges were dropped, and her arrest records were expunged.

In response to this incident, Baldwin filed a *pro se* lawsuit against Dorsey and others under 42 U.S.C. § 1983, asserting that their actions violated the Fourth and Fourteenth Amendments.  Baldwin alleged that her psychiatric condition had deteriorated since the incident and she required hospitalization to treat her exacerbated PTSD symptoms.  She also alleged that she "re-experienc[ed]" the trauma of the incident and, as a result, now feared police, traveling, and taking prescription medication.

The defendants moved to dismiss for failure to state a claim.  The district court dismissed all claims except Baldwin's deliberate-indifference claim against Dorsey and granted Baldwin's motion for appointed counsel.  Dorsey then asserted qualified immunity and moved for summary judgment on Baldwin's remaining claim.  The court heard argument, denied the motion from the bench, and issued a written opinion stating that fact issues remained as to whether a constitutional violation occurred and whether Dorsey was entitled to qualified immunity.  Dorsey timely appealed.

## STANDARD OF REVIEW

To start, we must address a jurisdictional challenge.  Baldwin maintains that "Dorsey's arguments on appeal challenge only the district court's

determination that there remain genuine disputed facts." While the denial of a summary judgment motion based on qualified immunity is immediately appealable, this court's jurisdiction extends only to "the district court's legal analysis of qualified immunity," *Jason v. Tanner,* 938 F.3d 191, 194 (5th Cir. 2019), not to the sufficiency of the evidence. Plainly, Dorsey has asserted qualified immunity as a matter of law. A large portion of her brief is dedicated to discussing cases suggesting that her response to Baldwin did not amount to objectively unreasonable behavior in light of clearly established law. Dorsey alludes to fact issues, but the introduction to her brief states that "[w]hen considering a qualified immunity defense, the Court must decide . . . whether facts alleged, taken in the light most favorable to the plaintiff" violated a constitutional right. We have jurisdiction over the issues raised.[2]

Turning to the merits, "[o]nce a government official asserts [qualified immunity], the burden shifts to the plaintiff to 'rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.'" *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (quoting *Gates v. Tex. Dep't of Prot've & Reg'y Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). "Where, as here, the district court finds that genuinely disputed, material fact issues preclude a qualified immunity determination, this court can review only their materiality, not their genuineness." *Manis v. Lawson,* 585 F.3d 839, 842 (5th Cir. 2009). Yet, "[w]hether there are material issues of fact is reviewed *de novo.*" *Id.* at 843 (citing *Ontiveros v. City of Rosenberg,* 564 F.3d 379, 382 (5th Cir. 2009)).

---

[2] Although Dorsey disputes the timing of Baldwin's "outcry" to her for hospital treatment, she concedes, as she must, Baldwin's assertion of timing for purposes of qualified immunity. Dorsey also concedes that Baldwin received no suicide evaluation for several hours after her arrest, but she does not and need not concede that she consequently "did nothing" to prevent Baldwin from killing herself.

Further, "[t]he plaintiff's factual assertions are taken as true to determine whether they are legally sufficient to defeat the defendant's motion for summary judgment." *Id.* (citing *Freeman v. Gore,* 483 F.3d 404, 410 (5th Cir. 2007)).

## DISCUSSION

Baldwin must establish material fact issues on two points to survive summary judgment based on qualified immunity. *Cleveland v. Bell*, 938 F.3d 672, 675–76 (5th Cir. 2019). She must adduce facts to show that Dorsey violated her constitutional rights, and she must show that "the asserted right was clearly established at the time of the alleged misconduct." *Id.* A court may consider either condition first, and if either condition does not obtain, then Dorsey is immune. *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (en banc).

To be more precise, the Fourteenth Amendment protects pretrial detainees' right to medical care and to "protection from known suicidal tendencies." *Garza v. City of Donna,* 922 F.3d 626, 632 (5th Cir. 2019); *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996) (en banc). A government official violates a Fourteenth Amendment right when the official acts with deliberate indifference to a detainee's serious medical needs. To prove deliberate indifference, Baldwin must show that Dorsey was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that Dorsey actually "dr[e]w the inference," and that Dorsey "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994)); *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). Finally, Baldwin must show that "substantial harm"

resulted from Dorsey's alleged deliberately indifferent conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

The second prong of the qualified immunity analysis asks whether the detainee's right to treatment for serious medical needs was "clearly established" such that every "reasonable official would understand that what [she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). This inquiry "must be undertaken in light of the specific context of the [particular] case, not as a broad general proposition . . . ." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Although qualified immunity does not require a case in point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

In this case, the district court purported to find "a substantial risk of serious harm"—namely, "a significant risk of suicide"—in the fact that Baldwin "was either on the brink of a suicide attempt via prescription overdose or had already overdosed on sleeping pills." The court found genuine disputes as to whether the significant risk existed and whether Dorsey actually inferred a substantial risk of suicide. Further, the court found it "unreasonable" that the "Defendant [took] *no* action for almost three hours after learning of Plaintiff's suicidal ideations and possible overdose just hours earlier," "refus[ing] to treat [Plaintiff], and ignor[ing] [her] complaints" (internal citations omitted). Finally, the court accepted as "substantial" Baldwin's allegations of psychological and other harm resulting from Dorsey's alleged conduct. Based on these alleged facts, and the court's view that "Defendant's total failure for three hours to take any measures to address Plaintiff's risk of suicide is a violation of clearly established law," the court denied Dorsey's motion for summary judgment.

No. 19-20465

We are constrained to disagree with the court's conclusions on both the constitutional violation and the question of clearly established law.

First, as a matter of law, the record does not support an inference that while in Dorsey's custody Baldwin faced a substantial risk of suicide. Second, as a matter of law, Dorsey's conduct did not amount to "inaction" in response to Baldwin's outcry for psychological assistance. We assume that when she was found, Baldwin "was either on the brink of a suicide attempt via prescription overdose or had already overdosed on sleeping pills," but that fact is not germane to the risk that, once in Dorsey's custody, she would commit suicide by overdose.[3] It is undisputed that Baldwin was monitored from the moment she was found at the intersection until she was handcuffed, and she was handcuffed until she went to the hospital. Because of this, a reasonable jury could infer that Baldwin would have *liked* to have taken more sleeping pills, but no factfinder could reasonably infer a substantial risk that Baldwin actually *could* take more pills. Accordingly, Baldwin did not face a substantial risk of suicide by overdose while in Dorsey's custody.

Baldwin suggests that there was a substantial risk that she would commit suicide by other means. But even if Dorsey inferred a substantial risk that Baldwin would commit suicide by means other than overdose, still, Dorsey's conduct—*e.g.*, handcuffing Baldwin in the patrol car and handcuffing her to a bench by one hand at the Intox facility—were reasonable measures to (and did in fact) abate that risk. On this record, no reasonable jury could

---

[3] Baldwin does not argue that her alleged overdose itself endangered her physical health. Indeed, at oral argument, Baldwin's counsel explicitly stated that it has "not been our position" that Baldwin "was in imminent danger of death by overdose." In any event, the risk of serious harm resulting from past action in this case is nothing like the risk in *Dyer v. Houston*, for example. In that case, this court affirmed that a jury could plausibly infer a substantial risk that serious harm would result from an 18-year-old, "in the grip of a drug-induced psychosis, str[iking] his head violently against the interior of [a] patrol car over 40 times en route to the jail." 955 F.3d 501, 508 (5th Cir. 2020).

determine that Dorsey was deliberately indifferent to protecting Baldwin against self-harm or suicide.

As still another alternative, Baldwin suggests that Dorsey was deliberately indifferent to her serious medical need for treatment of a psychological crisis. For Baldwin to have a claim on this ground, the record would have to support that Baldwin faced a substantial risk of serious psychological harm, that Dorsey inferred or knew as much,[4] that Dorsey failed to take reasonable measures to abate the risk, and that substantial harm resulted from that failure. Assuming the first two elements are debatable, we will consider whether Dorsey took reasonable measures to abate a substantial risk of serious psychological harm.

The central fact relied on by the district court is that Dorsey "t[ook] *no* action for almost three hours after learning of Plaintiff's suicidal ideations and possible overdose just hours earlier." Yet it is undisputed that Dorsey took Baldwin to a nurse within three hours and to the hospital for suicide evaluation within four hours. Three hours' delay in directly responding to a medical need, at least on the facts alleged here, is not the same as never taking responsive action at all. Moreover, the reason for delay in this case—to gather information about Baldwin's level of intoxication—is a legitimate governmental objective. *Cf. Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992) (Pre-trial detainees "must be provided with 'reasonable medical care, unless the failure to supply it is reasonably related to a legitimate government objective.'" (quoting *Cupit v. Jones,* 835 F.2d 82, 85 (5th Cir. 1987))); *Grayson v. Peel*, 195 F.3d 692, 696 (4th Cir. 1999) (recognizing that allowing a constitutional claim in this area for police conduct that does not rise to the level of deliberate

---

[4] The district court points out that Dorsey had "taken classes in Suicide Prevention, Inmates with Mental Illness, and Crisis Intervention Training."

indifference would result in the "startling" requirement that "officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers"). Consequently, this theory of liability also fails because the undisputed facts do not amount to a violation of constitutional rights.

In addition to the failure of her constitutional-violation theories, Baldwin has not shown that "the asserted right was clearly established at the time of the alleged misconduct," *Bell*, 938 F.3d at 676. As the district court stated, "the question is whether, assuming that Defendant learned of Plaintiff's suicidal ideations around 1:35 AM, Defendant had fair notice that she was required to take measures to address Plaintiff's expressed suicidal thoughts sometime sooner than three hours later." In particular, because Dorsey clearly kept Baldwin safe from self-harm, the question is whether Dorsey had fair notice that she was required to provide professional medical care within three hours. We hold that no such fair notice was available.

The district court held to the contrary but identified no case that clearly answers its question. Instead, it cited, first, *Brown v. Strain*, in which the defendant waived the issue whether his conduct was objectively unreasonable in light of clearly established law, 663 F.3d 245, 249–51 (5th Cir. 2011). The court cited two cases where, we held, there was no deliberate indifference and one case in which this court, under the pre-*Twombly* standard, reversed a Rule 12(b)(6) dismissal of a possible deliberate-indifference claim. *See Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755–56 (5th Cir. 2001); *Rhyne*, 973 F.2d at 392–94 (5th Cir. 1992); *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1189 (5th Cir. 1986). None of these cases is apposite.

The district court acknowledged that in *Hare v. City of Corinth* this court stated, "[W]e *cannot say* that the law is clearly established with any clarity as to what . . . measures [jailers must take to prevent inmate suicides once they

know of the suicide risk]." 135 F.3d 320, 329 (5th Cir. 1998) (emphasis added) (quoting *Rellergert v. Cape Girardeau County,* 924 F.2d 794, 797 (8th Cir. 1991)). *Hare* thus fails to clearly establish the objective unreasonableness of Dorsey's conduct. Certainly, nothing in *Hare* clearly establishes that to inform a nurse of a detainee's suicidal ideations after three hours' delay (during which time the detainee was tested for intoxication, remained handcuffed, and was deprived of the only means of suicide to which she had, apparently, resorted) is objectively unreasonable. *See id.*

Baldwin takes one more shot at showing that clearly established law gave notice to officers that failing to take her to the hospital within three hours of a report of suicidal ideations would constitute deliberate indifference. She points to *Easter v. Powell*, in which a nurse "offered *no* treatment options"— ever—to a prisoner who had suffered severe chest pain for twenty minutes and "ha[d] a history of serious heart problems," including chest pain and vomiting two days earlier. 467 F.3d 459, 465, 461 (5th Cir. 2006) (emphasis added).[5]

Because Baldwin fails to establish a triable material issue concerning a violation of a constitutional right or law clearly establishing that Dorsey's alleged conduct was objectively unreasonable, we conclude that Dorsey is entitled to qualified immunity.

## CONCLUSION

The judgment of the district court is **REVERSED**, the case **REMANDED** for entry of **DISMISSAL**.

---

[5] *Easter* might clearly establish the unreasonableness of the conduct toward the drug-tripping, self-harming arrestee in *Dyer*, where officers never sought medical attention, 955 F.3d at 508, but it is inapposite to a three-hour delay during which the prisoner was prevented from self-harm.